UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19 CR 850 |
| v. | Judge Mary M. Rowland |
| SHELDON MORALES, and EDUARDO SANTANA | |

**GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully submits the its consolidated motions *in limine* and seeks pretrial rulings with respect to the individual motions set forth below. In support of these motions, the government states at follows:

**I.  MOTION TO PRECLUDE ARGUMENT CONCERNING MISSING WITNESSES**

It is within the Court's discretion to prohibit argument by either side concerning missing witnesses that did not testify at trial and were available to both sides. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "[W]hen the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). Certain witnesses in this case, such as the brokers and suppliers on the other side of defendants' drug transactions (Co-Conspirators A and B, and "Omar") are unknown and unavailable. Other witnesses, such as additional surveillance officers at the scene

-1-

of transactions, may be called by either side. Therefore, the government requests that the Court prohibit defendant from introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify.

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. As the Seventh Circuit has held, ordinarily, a prosecutor may reply to an argument by the defense that the absence of some witness counts against the prosecution by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392-93.

## II. MOTION TO PRECLUDE REQUESTS FOR AND COMMENTS REGARDING DISCOVERY IN THE PRESENCE OF THE JURY

The government moves to preclude defendant from requesting discovery from witnesses or opposing counsel, moving for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Quinones*, 02 CR 924, 2003 WL 22697503, at *3 (N.D. Ill. Nov. 13, 2003) (ordering, "all requests for additional discovery are to be made outside the presence of the jury"). In fact, as often happens, these requests are ill-founded because the discovery already has been tendered or is not subject to disclosure. These requests should be made to the Court or opposing counsel outside

the presence of the jury so that no prejudice results to either side. Accordingly, the government moves for an order that requires that the parties make requests for, or comments relating to, discovery outside the presence of the jury. *See, e.g., United States v. Gray*, No. 07 CR 166, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury).

### III. MOTION TO BAR EVIDENCE OR ARGUMENT ENCOURAGING JURY NULLIFICATION

The government moves to preclude the defense from arguing or presenting evidence designed to elicit jury nullification. A defendant may not induce a jury to grant acquittal notwithstanding the jury's determination that the government met its burden of proof. *See, e.g.*, *United States v. Brown*, 548 F.2d 204, 210 (7th Cir. 1977) (affirming refusal to give nullification instruction because to do so would have been clearly improper); *see also* Pattern Criminal Jury Instructions of the Seventh Circuit § 1.01 (2012) (Functions of Court and Jury). The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quotation omitted); *United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012) (ruling district court properly excluded evidence regarding prior lenient treatment enjoyed by illegal reentry defendant as irrelevant and potentially inviting

of nullification).  As the Seventh Circuit has stated, "[a]n unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant." *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996).

Accordingly, the government requests that the Court enter an order precluding defendant from arguing at trial that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification.  Although the government cannot anticipate each form of potential jury nullification argument or evidence, the government moves to exclude the potential areas noted below, all of which are irrelevant to the elements of the crime charged, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

### A.    Argument or Questioning about the Government's Motivations for Investigating or Prosecuting this Case

Evidence bearing on the government's decision to prosecute is "extraneous and collateral." *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). This is because inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or

innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at *7 (N.D. Ill. June 15, 1992) (granting government's motion *in limine* to preclude inquiry regarding "[t]he subjective intentions or motivations of the agents involved in this case"); *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991) (precluding evidence concerning discussions between supervising agent and cooperating witness and noting, "evidence of conversations between the government and its cooperating witness are immaterial; rather what matters is what the witness said to the defendants").

As the Supreme Court has plainly stated, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 464 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

For instance, defendant Santana should be prohibited from arguing that the government had an improper motive to prosecute him after previously dismissing a

case against him. In November 2017, Santana was charged with possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and two counts of unlawful possession of a firearm by a felon. *See United States v. Santana*, 17 CR 760 (N.D. Ill.) (Kennelly, J.). After indictment, the United States Attorney's Office for the Northern District of Illinois learned that the case agent for that case, Eduardo Gomez, was under investigation by the United States Attorney's Office for the Southern District of New York, for engaging in a RICO conspiracy with a drug trafficking organization based in Puerto Rico. Because Gomez had not been charged yet, and that investigation was still covert, the government could not disclose the investigation to defense counsel without compromising the New York investigation.[1] On April 19, 2018, the United States Attorney's Office voluntarily dismissed that case without prejudice. Any evidence of the government's previous dismissal, or the investigation of Gomez, would be irrelevant, and any reference to it would be an improper attack on the government seeking jury nullification or confusion of the issues.

### B.     Argument or Evidence of "Outrageous Government Conduct"

Historically, district courts have granted motions *in limine* "to bar defendants

---

[1] The government is not aware of any evidence that Gomez improperly influenced the prosecution of Santana in that case, nor was Gomez a necessary witness, but the government understood that it could not move to exclude the investigation without disclosing the Gomez investigation to the defense, thus compromising a covert investigation into Gomez.

from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *Shields*, 1991 WL 236492 at *3; *see also United States v. Finley*, 708 F. Supp. 906, 913-14 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Specifically, the Court should preclude any argument that law enforcement acted inappropriately by intercepted Sheldon Morales's phone calls or conducting a controlled delivery to Morales's family residence on September 16, 2019.

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort. Second, even before the *Boyd* decision, the Seventh Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the

-7-

issue is not a jury question) (citations omitted).  In 2015, the Seventh Circuit declined an invitation to revisit its position on the "outrageous governmental misconduct" defense. *See United States v. Smith*, 792 F.3d 760, 766 (7th Cir. 2015). Thus, the government respectfully requests that the Court preclude any such argument in this case.

### C.    Arguments or References to the Penalties Faced by Defendant if He Is Convicted

The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *See, e.g.*, *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence.  *See Shannon v. United States*, 114 S. Ct. 2419, 2424 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same).  Mention of the potential penalties faced by a defendant—including possible imprisonment, restitution, or fines—would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction on a defendant and, ultimately, nullification.  *See, e.g.*, *United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.") (quoting *United*

*States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980)); *United States v. Patterson*, No. 95 CR 242, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification). This is of a particular concern in this case because defendants are facing a mandatory minimum of ten years' imprisonment, and the jury will be making a special finding as to the quantity of narcotics involved.

Accordingly, this Court should preclude defendant from introducing evidence, making argument, or otherwise mentioning the penalty that he faces.

### D. Defendant's Family's Needs

While the government acknowledges that the defendant is permitted to introduce, through proper methods, limited testimony regarding his background, the government moves to preclude evidence and argument regarding defendant's family that tends to create the inference that family needs are the reason for defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon the defendant or his families. Such evidence is irrelevant to a defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. *See generally*, *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006). Accordingly, such evidence or argument is properly excluded.

### IV. MOTION TO PRECLUDE EXPLAINING OR DEFINING REASONABLE DOUBT

The government moves to preclude defense counsel from explaining or attempting to define reasonable doubt. The Seventh Circuit has clearly and

consistently held that "reasonable doubt" is a term that should not be defined by the trial court or counsel. *See, e.g.*, *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (explaining that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"); *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) ("Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer in the minds of the jury.") (citations omitted).

In *United States v. Thompson*, 117 F.3d 1033 (7th Cir. 1999), the Seventh Circuit affirmed the district court's decision to prevent defense counsel from explaining reasonable doubt to the jury. The Seventh Circuit noted that by preventing defense counsel's attempt to explain reasonable doubt, "[r]ather than abusing its discretion, the district court heeded our express command." *Id.* at 1034; *see also United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury.").

Finally, the pattern jury instructions for the Seventh Circuit also make clear that it is inappropriate for trial counsel to provide a definition of reasonable doubt. *See* Committee Comment to Seventh Circuit Pattern Criminal Jury Instruction 1.04 (2020). As such, the government moves to preclude defense counsel from attempting to explain or define reasonable doubt.

## V.   MOTION TO PERMIT IMPEACHMENT OF DEFENDANT **SHELDON MORALES** WITH PRIOR CONVICTION IF HE TESTIFIES

If defendant SHELDON MORALES testifies at trial, the government moves that the Court allow the government to cross examine him regarding the following prior conviction pursuant to Federal Rule of Evidence 609(a): distribution of a controlled substance in a 2011 case, for which MORALES was convicted on May 1, 2013 and ultimately received a sentence of 84 months' imprisonment.[2] This conviction falls within Rule 609's ten-year period.[3]

In the event MORALES testifies in this case, his credibility will be a central issue at trial. MORALES may dispute his involvement in the conspiracy, his possession with intent to distribute controlled substances, and his money laundering activities as charged, or he may give some other explanation for why he should be acquitted. If a criminal defendant testifies at trial, the government may cross

---

[2] The indictment alleges that defendant committed the instant offense after having previously convicted of a "serious drug felony," pursuant to 21 U.S.C. § 841(b)(1). Because this allegation has the effect of raising the statutory maximum and minimum penalties, the government is required to prove the following three elements beyond a reasonable doubt to the jury: (1) MORALES has "served a term of imprisonment of more than 12 months" for a qualifying predicate offense; and (2) the service of that term of imprisonment ended within 15 years of the commencement of the instant offense. 21 U.S.C. § 841(b)(1); *Alleyne v. United States*, 570 U.S. 99, 107-08 (2013); *United States v. Williams*, 402 F. Supp. 3d 442, 449 n.7 (N.D. Ill. 2019). If the Court allows the government to present these elements, or stipulations to these elements, to the jury, this motion to impeach him with this conviction will be largely moot. This motion applies if the Court chooses to bifurcate the trial and allows the government to present this evidence only after the jury convicts him on the underlying charged crime.

[3] Rule 609's ten-year clock "starts at the witnesses' release from any physical confinement, or in the absence of confinement, at the date of conviction," and it ends upon "the start of the trial at which the witness is testifying." *United States v. Rogers*, 542 F. 3dd 197, 201 (7th Cir. 2008).

examine him on his prior felony convictions for purposes of attacking his character for truthfulness. Fed. R. Evid. 609(a)(1)(B). A jury is entitled to evaluate the credibility of a defendant's testimony in light of his prior felony convictions. The importance of defendant's testimony and the centrality of his credibility outweighs any prejudicial effect and the Court should permit proper impeachment as contemplated by the Federal Rules of Evidence.

Federal Rule of Evidence 609 permits the admission of evidence of a defendant's conviction to attack his credibility if the Court determines that the probative value of the evidence outweighs its prejudicial effect. Fed. R. Evid. 609(a)(1)(B). The Seventh Circuit follows a five-part balancing test to determine whether the probative value of a conviction outweighs its prejudicial effect. The factors are: (i) the impeachment value of the prior crime; (ii) the point in time of the conviction and the witness's subsequent history; (iii) the similarity between the past crime and the charged crime; (iv) the importance of the defendant's testimony; and (v) the centrality of the credibility issue. *See, e.g., United States v. Gant*, 396 F.3d 906, 909-10 (7th Cir. 2005); *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). These factors are merely a guide to the district court's exercise of its wide discretion. *Montgomery*, 390 F.3d at 1015. Here, the factors weigh in favor of allowing impeachment on MORALES'S prior conviction.

-12-

First, the impeachment value of defendant's prior conviction is high for several reasons. As an initial matter, the Seventh Circuit has observed that *any* prior felony conviction diminishes one's credibility:

> The rationale for…allowing a prior crime to be used to undermine testimony is that a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime. The rationale is underinclusive, since many people who have committed a felony have not been caught or if caught have not been convicted, because of the prosecution's heavy burden of proof. Moreover, every judge is aware that many people who do not have a criminal record will lie in a trial when it is to their advantage.

*Schmude v. Tricam Indus., Inc.,* 556 F.3d 624, 627-28 (7th Cir. 2009). While the prior conviction does not on its face involve dishonesty, the first factor of the balancing test favors admissibility. *See United States v. Nururdin,* 8 F.3d 1187, 1192 (7th Cir. 1993).

Regarding the second factor, the prior conviction is close in time to the crimes alleged in the indictment.[4] Indeed, defendant was supervised release when he committed the instant offense. This bears heavily on defendant's ability to testify truthfully in a court of law. And, there is nothing in defendant's "subsequent history,"

---

[4] By contrast, defendant MORALES was convicted in 2003 of residential burglary and was sentenced to 8 years' imprisonment; he was convicted in 2004 of aggravated unlawful use of a weapon and sentenced to 18 months' imprisonment; he was convicted in 2007 of possession of a controlled substance and sentenced to 1 year of imprisonment; he was convicted in 2007 of battery and sentenced to 30 days' imprisonment; and he was convicted in 2008 of possession of a controlled substance and sentenced to 2 years' imprisonment. Pursuant to Federal Rule of Evidence 609(b), the government will not seek to impeach defendant MORALES with these convictions.

-13-

after the conviction suggesting that the conviction is longer relevant to his credibility today. Accordingly, this factor weighs in favor of admissibility.

The third factor of the balancing test—the similarity of the past crimes and the charged crime—generally requires caution on the part of the district court. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997). Here, the government acknowledges that defendant's prior felony conviction shares similarities with the crime charged in this case and is therefore potentially prejudicial. *See United States v. Shapiro*, 565 F.2d 479 (7th Cir. 1977) (the danger of unfair prejudice resulting from the admission of a prior conviction increases "[w]hen the prior conviction and the charged acts are of a similar nature."). Potential prejudice to the defendant may be cured by a limiting instruction to the jury that evidence of the defendant's prior conviction may be used only to assess the defendant's credibility and not to impute a propensity to commit the charged offense. *See United States v. Jackson*, 546 F.3d 801, 820 (7th Cir. 2008) (instruction that jury was to consider defendant's conviction solely in evaluating defendant's truthfulness as a witness "mitigated the prejudicial impact"); *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993); 7th Cir. Pattern Crim. Fed. Jury Instruction 3.06 (2020) ("You may consider evidence that the

defendant was convicted of a crime only in deciding the believability of his testimony. You may not consider it for any other purpose.")[5]

Most significantly, the fourth and fifth factors of the balancing test overwhelmingly support the admission of the conviction for the limited purpose of impeaching defendant's credibility. Presumably, defendant would assert or suggest during his direct examination that he was not involved in the conspiracy, and did not have any intent to distribute or possess controlled substances. As defendant's prior felony conviction speaks strongly to his incentive for truth telling and his respect for the rules administered by this Court, admission of his conviction is appropriate to allow the jurors to evaluate his credibility. Where "conflicting accounts" are offered by defendant and the government's witnesses, the credibility of defendant becomes the central issue in the trial. *See Jackson*, 546 F.3d at 819; *Montgomery*, 390 F.3d 1016 (district court correctly recognized that defendant's credibility was central and impeachment with prior conviction was proper); *see also United States v. Gant*, 396 F.3d 906, 909-10 (7th Cir. 2005) (given defendant's theory that he possessed a pipe, not a gun, his credibility was crucial and therefore impeachment with 8-year old conviction for drug crime was proper); *United States v. Redditt*, 381 F.3d 597, 601

---

[5] If the Court ultimately concludes that the potential prejudice from introducing the substance of defendant's prior conviction outweighs its probative value, this prejudice can be cured by permitting reference to his prior convictions without naming the specific offenses. This would obviate any potential prejudice arising from similarities between the prior conviction for bank robbery and the charged conduct while still allowing for proper impeachment of the defendant.

(7th Cir. 2004) (district court did not err in admitting evidence of conviction that was more than 10 years old where defendant's credibility was "a critical factor" in the case).

Finally, if defendant testifies and the government impeaches him with his prior conviction and defendant tries to minimize, mischaracterize, or explain away his conviction, the government should be able to inquire into the details of the prior conviction. *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005). The government is aware that such an open door is not a "license to dwell on the details of the prior conviction and shift the focus of the current trial to the defendant's prior bad acts." *Id.* (quoting *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993).

## VI. MOTION TO PERMIT IMPEACHMENT OF DEFENDANT EDUARDO SANTANA WITH PRIOR CONVICTIONS IF HE TESTIFIES

If defendant EDUARDO SANTANA testifies at trial, the government moves that the Court allow the government to cross examine him regarding his two counts of conviction for perjury, for which SANTANA received 6 years' imprisonment and was released on parole on July 20, 2004.[6] SANTANA's convictions for perjury fall

---

[6] SANTANA has several convictions from the same day in 2001, including one for manufacture/delivery of a controlled substance and two perjury charges. Based on the plea transcript, it appears that SANTANA committed perjury in a previous hearing on that same case. The government is only seeking to introduce the perjury conviction. Based on the Seventh Circuit's decision in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), the government is no longer seeking to enhance defendant's sentence with the 21 U.S.C. § 851 notice set forth in the indictment for this conviction.

outside Rule 609's ten-year period.[7] Nevertheless, the factors weigh in favor of allowing impeachment on SANTANA's prior conviction.

First, the impeachment value of defendant's two perjury convictions cannot be overstated. Repeated instances of deceit, particularly while under oath, are directly probative for truthfulness, particularly where SANTANA may testify here on his own behalf. If SANTANA testifies, he will swear a similar oath to tell the truth under penalty of perjury. The knowledge that SANTANA has previously taken a similar oath and made material, false statements while under that oath – twice – is critical to a jury's assessment of his veracity in the instant case. Having previously been convicted of violating that oath, the probative value of SANTANA'S prior two perjury convictions substantially outweighs any prejudice caused by its admission into evidence.

Regarding the timing of the conviction, the government acknowledges that defendant's two perjury convictions fall outside the 10-year period circumscribed by Federal Rule of Evidence 609(b). However, the prior convictions for perjury are not

---

[7] SANTANA was convicted of the following: possession of a controlled substance in 1998, for which he received 1 year of imprisonment; resisting arrest in 2000, for which he received a fine; manufacture/delivery of a controlled substance in 2001, for which he received 6 years' imprisonment (the same conviction referenced in footnote 6); unlawful possession of ammunition in 2009, for which he received 30 days' imprisonment; no turn signals violation, and failure to carry or display driver's license of permit in 2009, for which he received 1 day imprisonment; possession of a counterfeit credit card in 2010, for which he received 2 years' imprisonment; and possession of stolen property in 2012, for which he received 1 year conditional discharge. Pursuant to Federal Rule of Evidence 609(b), the government will not seek to impeach defendant SANTANA with these convictions.

so remote to remove the impact on defendant's credibility. And while the Seventh Circuit has previously upheld a district court's decision not to allow impeachment based on a 12-year-old perjury conviction, the Seventh Circuit specifically noted several factors that reduced the value of that perjury conviction, including that the conviction did not involve court testimony, but instead involved a statement made on an application for a California driver's license, and that the defendants were permitted to impeach with four other serious felony convictions. *United States v. Gray*, 410 F.3d 338, 346 (7th Cir. 2005). None of those conditions are present here. The government is not seeking to admit any other convictions from SANTANA's record. Unlike in *Gray*, SANTANA was convicted of perjury in a manner directly related to his criminal case if he testifies. The fact that SANTANA was found guilty of two separate counts of perjury is critical to the jury's assessment of his truthfulness, and should be admissible.

The third factor of the balancing test—the similarity of the past crimes and the charged crime—weighs in favor of admissibility. SANTANA's two perjury convictions share no overlap with the charge in the instant case, conspiracy to possess with intent to distribute controlled substances. The government is not requesting admission of any felonies that overlap in nature, such as SANTANA's related 2001 conviction for manufacture/delivery of a controlled substance concoction. The government is solely requesting admissibility for those convictions that bear directly on defendant's pattern of criminal conduct while under oath.

Finally, the fourth and fifth factors of the balancing test overwhelmingly support the admission of the conviction for the purpose of impeaching defendant's credibility. Presumably, defendant would assert or suggest during his direct examination that he was not involved in the conspiracy, and did not have any intent to distribute or possess controlled substances. Defendant's two prior perjury convictions speak directly to his incentive for truth telling and his respect for the oath administered by this Court. Admission of his conviction is appropriate to allow the jurors to evaluate his credibility.

## CONCLUSION

For the reasons set forth above, the government moves to admit and exclude evidence as set forth above.

Dated: July 5, 2022

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:     */s/ Charles W. Mulaney*
CHARLES W. MULANEY
KIRSTEN MORAN
Assistant U.S. Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300